UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CHAD TWO HEARTS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 3:16-CV-03012-RAL<br><br>OPINION AND ORDER DENYING<br>MOTION UNDER 28 U.S.C. § 2255 |

Plaintiff Chad Two Hearts has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. CIV Doc. 1.[1]   Two Hearts' § 2255 motion raises four arguments of ineffective assistance of counsel and a claim of prosecutorial misconduct. CIV Doc. 1.  This Court screened the § 2255 motion and ordered service and an answer. CIV Doc. 4.  Upon a motion by the United States and after an attorney-client privilege waiver by Two Hearts, Two Hearts' prior counsel filed an affidavit addressing the claims of ineffective assistance of counsel. CIV Docs. 6, 8, 9, 16. The United States then filed a motion to dismiss the § 2255 motion. CIV Doc. 20.  After Two Hearts had not responded to the motion to dismiss within the time set by local rule, this Court sent an order advising Two Hearts of the need for a response and giving Two Hearts until November 23, 2016, to file any response. CIV Doc. 22.  After Two Hearts filed a motion rather than a response, this Court entered an order advising Two Hearts that the Civil Local Rules of the District of South Dakota required a response within 21 days of any

---

[1] Citations to pleadings from this case will use "CIV Doc." followed by the document number in the CM/ECF system.

1

motion, explaining how this Court already had on its own granted additional time for Two Hearts' response, declining to grant Two Hearts' motion to delay the case for him to get help from a soon-to-be law student in custody, and giving Two Hearts until January 18, 2017, to file any response to the motion to dismiss. CIV Doc. 24. Two Hearts has filed no response to the motion to dismiss. Because the motion and files and records of the case show that Two Hearts is entitled to no relief, this Court denies the § 2255 motion and dismisses the case.

## I. Facts From Underlying Case[2]

Two Hearts was indicted on four counts: Aggravated Sexual Abuse of a Child, Failure to Register as a Sex Offender, Assault with a Dangerous Weapon, and Assault Resulting in Serious Bodily Injury. CR Doc. 1. On a motion from Two Hearts' trial counsel, Jana M. Miner, this Court severed counts for trial such that the allegation of Aggravated Sexual Abuse of a Child occurring between March of 2005 and March of 2007, was severed for trial from the allegation of a Failure to Register as a Sex Offender between August of 2007 and August of 2012, and in turn those counts were severed from the allegation of Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury occurring on July 25, 2012. CR Doc. 27.

The Aggravated Sexual Abuse of a Child charge was tried to a jury in late August of 2013. The United States called as its first witness the mother of T.K., the sexual assault victim. T.K.'s mother testified that T.K. was born in Rapid City, in March of 1995 and that Two Hearts is T.K.'s biological father. T.K.'s mother and Two Hearts had a brief relationship and never lived together. When T.K. was three, his mother moved back to Eagle Butte, South Dakota, on the Cheyenne River Indian Reservation. She then shared custody of T.K. with Verna Meter, who

---

[2] Citations to pleadings from the underlying case of United States of America v. Chad Two Hearts, 12-CR-30108-RAL, will use "CR Doc." followed by the document number in the CM/ECF system.

2

is Two Hearts' mother and in turn T.K.'s paternal grandmother. Two Hearts entered T.K.'s life around the time when T.K. was four. T.K. attended kindergarten and first grade in Eagle Butte.

Two Hearts moved to Hills, Minnesota, and took T.K. to live with him there. Two Hearts returned with T.K. in the summer of 2004 to Eagle Butte and they then lived at Verna Meter's home in Habitat Housing, Eagle Butte. T.K. started fourth grade in Eagle Butte in 2004. Indeed, the United States later called a school counselor in the Cheyenne Eagle Butte school system to confirm that T.K. was in the Hills/Beaver Creek school system for second and third grade, and returned to enroll in the Cheyenne Eagle Butte school system as a fourth grader on August 17, 2004. See trial exhibits 14, 15.

T.K's mother testified that T.K. in November of 2004 wanted to stay exclusively with her. In December of 2004, Two Hearts came to pick up T.K.; T.K. started crying, said he did not want to go with his father Two Hearts, and then talked separately with his mother making a disclosure that prompted her to contact Cheyenne River Sioux Tribe police and get her son into counseling.

T.K. himself was the second witness in the prosecution's case. T.K., who was an 18-year-old senior in high school when he testified, confirmed that he lived with his father Two Hearts in a trailer house in Hills, Minnesota, and attended second grade in the Hills/Beaver Creek school system. It was in Hills where his father Two Hearts began sexually abusing him. T.K. recounted that most of the time T.K. would be asleep in his bedroom before the sexual assaults occurred. T.K. would hear his bedroom door opening, Two Hearts would come in, and Two Hearts smelled of alcohol. Two Hearts would get into the bed with T.K., take off his clothes, and remove T.K.'s sweats and underwear. Two Hearts then would place his penis inside T.K.'s butt and go in and out. These sexual assaults occurred frequently when they were living

3

in Hills together. Neither T.K. nor Two Hearts said anything, and T.K. felt confused, not knowing what to think. Two Hearts also would hit T.K. with his hand open, with his fist, and with objects such as a spatula, meat tenderizer, and belt.

T.K. recalled returning to attend school in Eagle Butte and staying most of the time at his grandmother Verna Meter's home. T.K. recalled that, about one month after returning to Eagle Butte, he was asleep in a back bedroom when Two Hearts came into the room smelling of alcohol. T.K. was scared and did not say anything. Two Hearts then sodomized T.K. in the room. T.K. testified that this happened more than once in Eagle Butte, recalling a couple such occasions in Eagle Butte. T.K. told no one of the sexual assaults while living in his grandmother's home. After moving to his mother's home in the Chinatown area of Eagle Butte, T.K. did not at first tell his mother, but later disclosed to her what occurred. T.K. recalled then talking to a lady in Rapid City and then to people in Parkston about the sexual assaults.

The United States then called as a witness Lora Hawkins, a victims specialist who was working at the child advocacy center in Rapid City at the time she met and interviewed T.K. on a referral from the Cheyenne River Sioux Tribal Police. T.K. disclosed to Hawkins sexual abuse perpetrated by Two Hearts. Hawkins described how children have confusion when they are victims of sexual abuse and feel shame, embarrassment, humiliation and fear that may postpone disclosure, and that harsh physical discipline or abuse can make children more hesitant to disclose sexual abuse. Licensed psychologist Mindy Mitnick testified about why children tend to delay disclosure of sexual abuse due to their worries about the effect on the family and the perpetrator, concerns about whether they would be believed, and the shame, embarrassment, and fear that may affect their willingness to disclose.

The United States called as a witness DCI Special Agent Chad Mosteller, whom T.K. had identified as the person to whom he had disclosed the sexual abuse while in Parkston. Special Agent Mosteller spoke with T.K. in October of 2011 in Parkston about what Two Hearts had done. Special Agent Mosteller was present when an FBI agent and Cheyenne River Sioux Tribal investigator met with Two Hearts in March of 2012 about T.K.'s disclosures. Two Hearts acknowledged physically assaulting T.K., but when asked about whether he sexually assaulted his son, said "I don't think so." Two Hearts disclosed that he himself had been sexually abused, although he did not elaborate on the subject. Two Heart acknowledged living separately with T.K. in Hills and then living with T.K. in Eagle Butte at Verna Meter's home. At a second interview, Special Agent Mosteller heard Two Hearts admit to sexually assaulting T.K. twice in Minnesota by penetrating T.K.'s anus with his penis. Two Hearts, however, did not admit to doing so in Eagle Butte.

FBI Special Agent Mark Sitko, who assisted DCI Special Agent Mosteller in the investigation, testified that he participated in a June of 2012 interview of Two Hearts in Eagle Butte. After giving Two Hearts his Miranda rights and having Two Hearts sign off on an advice of rights form, Trial Ex. 8, Sitko questioned Two Hearts about sexually assaulting T.K. Two Hearts initially denied any sexual acts on T.K., but acknowledged hitting T.K. Two Hearts later admitted having placed his penis in T.K.'s anus twice while in Hills, Minnesota. Two Hearts said that he had awakened with his penis in his son's butt, and became emotionally upset and cried. An audio recording of the interview was evidence at trial. Trial Ex. 10; see Ex. 10-A (transcript of recording).

Two Hearts did not stipulate to being an "Indian" or that the place where the alleged offense occurred was "Indian country." Accordingly, the United States called as a witness the

5

enrollment specialist for the Cheyenne River Sioux Tribe to establish that Two Hearts is an enrolled member of the tribe and is an "Indian" for federal jurisdictional purposes. Trial Ex. 13. The United States also had the superintendent for the Bureau of Indian Affairs Cheyenne River Agency testify that the Verna Meter home is within "Indian country" on the Cheyenne River Indian Reservation. Hills, Minnesota, however, is not.

Two Hearts' trial counsel Miner appropriately cross-examined the prosecution's witnesses. Miner sought to call into question whether Two Hearts sexually assaulted T.K. in Eagle Butte and pointed out inconsistency in T.K.'s prior statements about whether Two Hearts sexually assaulted him a couple of times or more or less while in Eagle Butte. Miner called five witnesses in Two Hearts' case in chief, several of whom lived in the Verna Meter home with Two Hearts and T.K. The defense witnesses testified that they neither noticed anything unusual between T.K. and Two Hearts, nor heard T.K. disclose any sexual abuse. On cross-examination, the United States elicited from several of these witnesses that T.K. was very shy, quiet, and timid; that Two Hearts occasionally was drinking alcohol while in Eagle Butte; and that they did not see all of the interactions between T.K. and Two Hearts.

The jury returned a verdict of guilty on the Aggravated Sexual Abuse of a Child charge on August 28, 2013. CR Doc. 100. This Court sentenced Two Hearts to 324 months in the custody of the Bureau of Prisons, followed by five years of supervised release. CR Doc. 117. The United States chose to dismiss the remaining counts of the indictment. CR Doc. 116. Two Hearts appealed to the United States Court of Appeals for the Eighth Circuit. CR Doc. 125. On December 4, 2014, the Eighth Circuit issued an opinion affirming the conviction and rejecting Two Hearts' challenges to the sufficiency of the evidence and to what Two Hearts characterized as unreliable and uncorroborated testimony. CR Doc. 126.

## II.    Discussion

### A.  Evidentiary Hearing

An evidentiary hearing is not needed to address Two Hearts' contentions. "A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'"  Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (alteration in original) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).  Further, "[n]o hearing is required where the claim 'is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'"  Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (quoting Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994)).  Because the record convincingly refutes Two Hearts' assertions and shows conclusively that he is not entitled to relief, an evidentiary hearing is not necessary.  See United States v. Brown Thunder, No. 15-CV-3016-RAL, 2016 WL 6195485, at *4 (D.S.D. Oct. 21, 2016); United States v. Big Eagle, No. 13-CV-3015-RAL, 2014 WL 234735, at *8 (D.S.D. Jan. 22, 2014).

### B.  Two Hearts' Claims

Two Hearts' § 2255 motion raises four separate claims of ineffective assistance of counsel, with one of the claims alleging prosecutorial misconduct as well.  CIV Doc. 1.  The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel to defendants in criminal prosecutions for serious crimes.  U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335 (1963).  A defendant who claims to have been deprived of effective assistance of counsel must show: 1) that his lawyer's representation fell below an objective standard of reasonableness; and 2) that the lawyer's deficient performance prejudiced the defendant.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984); Nupdal v.

7

United States, 666 F.3d 1074, 1075 (8th Cir. 2012).  For the first requirement of the Strickland test, "the court must apply an objective standard and 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions."   Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995) (internal citation omitted) (quoting Strickland, 466 U.S. at 690).  To establish prejudice to satisfy the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Because hindsight analysis is problematic, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 689); see also Hunter v. Bowersox, 172 F.3d 1016, 1024 (8th Cir. 1999).  Thus, decisions involving trial strategy are "virtually unchallengeable." Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006). "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).  Where, as here, a petitioner makes multiple claims of ineffective assistance of counsel, each claim must be independently examined to determine if there is prejudice, rather than taking the matters collectively.  See Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002).  That is, the Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief."   United States v. Brown, 528 F.3d 1030, 1034 (8th Cir. 2008).  Thus, Two Hearts faces what the Supreme Court has characterized as a "highly demanding" standard under Strickland. Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).  Two Hearts has not met that standard.

## 1. Competency Issues

Two Hearts' first claim of ineffective assistance of counsel is the following:

Counsel did not move the Court for a competency evaluation regarding the Defendant after the Defendant disclosed to counsel of Defendant's use of drugs prescribed to him before and during trial and his desire to die. The result of said competency hearing would have directly affected the admissibility of Defendant's admissions during police interviews as well as his incompetency to stand trial.

CIV Doc. 1 at 4.[3]

Two Hearts's trial counsel was Jana M. Miner, the senior litigator of the Federal Public Defender's Office for North and South Dakota. Miner is a very experienced criminal defense attorney who has practiced law since 1983 and has focused her practice since November of 1991 on federal criminal defense work. CIV Doc. 16 at 1–2. In her affidavit, Miner provided the following information concerning Two Hearts' first claim of ineffective assistance of counsel:

Two Hearts made statements from the beginning of the case that he "deserved the death penalty," did not want to live, and was upset about his cases. On two occasions during the year before trial, I asked the jail staff to keep an eye on him. I did not specifically reference suicide because my belief was placing him in the "suicide watch" cell would not be good for his mental state. In April and May 2013, I had him evaluated by Dr. Stephen Manlove, a psychiatrist in Rapid City, South Dakota, for the express purpose of determining whether Two Hearts's depressed state was interfering with his ability to assist counsel and make rational decisions about accepting a plea agreement or going to trial. I asked Dr. Manlove to determine whether Two Hearts's prescription medications impacted his competency to make decisions. Dr. Manlove was asked to review Two Hearts's self-report of drug and alcohol use while on prescription medicines at the time of his statements to law enforcement. I had moved to continue a portion of the suppression hearing so that the competency examination could be performed. I then consulted with Dr. Manlove on the issue of voluntariness and Two Hearts's competency during the questioning by law enforcement, based on his reported levels of intoxication and medication.

Dr. Manlove examined Two Hearts's (sic) on three occasions and reached the ultimate decision that (a) Two Heart[s] was depressed but competent to assist counsel with the defense of the case and to make decisions regarding accepting a plea agreement and proceeding to trial, and (b) that the levels of intoxication

---

[3] Two Hearts also contends that he was held on "suicide watch" and repeats the allegation that counsel knew of this and failed to move for a competency evaluation. CIV Doc. 1 at 4.

along with the medications taken during the time frame of the law enforcement questioning did not render Two Hearts incompetent. I did not ask Dr. Manlove to prepare a written report, given that the report would not support a finding of incompetency at the present time or in the past. Dr. Manlove recommended a change in the medication for depression, which was accomplished. The findings of Dr. Manlove were shared with Two Hearts.

As for Two Hearts being held on "suicide watch" during the trial, that was at his request. I did not observe any change in Two Hearts's state of mind during the trial. My discussions with him concerning his right to testify focused on my advice that he should not take the witness stand because the prior conviction for rape would most likely be used as impeachment evidence. I also discussed his testimony at the suppression hearing as not credible. In the end, I was satisfied that his decision to not testify was a choice he made in a knowing, voluntary, and willing manner. I did not observe any change in his ability to make decisions or assist me during the trial that would have supported a motion to continue the trial or a motion to halt proceedings so that a further competency examination could be performed. Since it had been only four months since Dr. Manlove examined him for competency, I did not have a good faith basis to move the court to interrupt the trial. No one on the staff at the Hughes County Jail contacted me to discuss his mental state, which normally would occur when the jail staff believes a suicide watch is warranted. My opinion at the time was that Two Hearts was trying to delay the jury's decision on guilt.

I note that during times in my representation when I pressed Two Hearts to make decisions, he would try to have me removed as counsel. He did not want to go to trial, nor did he want to plead guilty. The subject of this case was to him humiliating and shameful. He had remorse over his physical cruelty to his son when he beat him. The sexual abuse allegations were unpleasant to discuss and Two Hearts understood fully that society viewed his acts as reprehensible. To that end, his inability to deal with accepting responsibility for his actions pushed the decision to go to trial more than any notion that he was not competent to make a decision.

CIV Doc. 16 at 3–5 (bracketed letter added). Two Hearts has not contested the information

provided by Miner concerning the evaluations of Dr. Manlove and her interaction with Two

Hearts.

Two Hearts has not shown that Miner's representation fell below an objective standard of

reasonableness concerning handling of his possible competency. Miner arranged for a

psychiatrist to evaluate Two Hearts on three occasions. That psychiatrist reached the conclusion

that Two Hearts was depressed but competent to assist counsel in the defense and to make

decisions, and that Two Hearts was competent when questioned by law enforcement. CIV Doc. 16 at 4. Miner, having received such information from Dr. Manlove, made the logical decision not to proceed with an effort to halt the trial for another competency evaluation, because she did not have a good faith basis to believe that Two Hearts was incompetent. CIV Doc. 16 at 4; see Morelos v. United States, 709 F.3d 1246, 1250 (8th Cir. 2013) (matters of strategy are left to "professional discretion" of counsel (quotation omitted)). Nor can Two Hearts meet the second prong of Strickland requiring a showing that the lawyer's deficient performance prejudiced the defendant. Miner already had arranged for a psychiatrist to see Two Hearts three separate times, and the psychiatrist found Two Hearts competent both with respect to statements to law enforcement and regarding assisting counsel in making decisions about plea negotiation and trial. Two Hearts has presented no evidence that suggests that a court-ordered competency evaluation would have reached any different result. Compare Paul v. United States, 534 F.3d 832, 845 (8th Cir. 2008) (holding that counsel's actions in not obtaining a competency hearing during trial were not ineffective because counsel had asked for psychiatric exam prior to trial).

## 2. Attacking T.K.'s Testimony

Two Hearts' second ground in his § 2255 motion blends claims of prosecutorial misconduct and ineffective assistance of counsel. Two Hearts acknowledges that Miner argued the testimony of T.K. to be uncorroborated, but claims she failed to exploit discrepancies between what T.K. said to the Grand Jury and at trial. CIV Doc. 1 at 5. Two Hearts also claims that the prosecutor "deliberately and maliciously misled the Grand Jury and the Petit Jury at trial in his eagerness to win the conviction." CIV Doc. 1 at 5. Two Hearts has not elaborated on what the alleged inconsistency before the Grand Jury was and Miner's affidavit affirms that she is unaware of what inconsistency Two Hearts is alleging. CIV Doc. 16 at 5. It has long been the

11

case that, on a § 2255 motion, the "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

The testimony before the Grand Jury obviously was sufficient to prompt an indictment for Aggravated Sexual Abuse of T.K. occurring on the Cheyenne River Indian Reservation during the relevant time period, and as detailed above, the testimony of T.K., though challenged by Miner on cross-examination, prompted the jury to convict Two Hearts. Two Hearts' own statements, and other corroborating information supporting T.K.'s testimony,[4] resulted in sufficient evidence to support a conviction. On appeal, the Eighth Circuit affirmed that there was sufficient evidence to support the conviction. CIV Doc. 126. In reaching that conclusion, the Eighth Circuit addressed Miner's challenges on behalf of Two Hearts to T.K.'s testimony. Under the circumstances, Two Hearts has failed to show that Miner's representation fell below an objective standard of reasonableness in not using Grand Jury testimony or that this alleged deficient performance was prejudicial to Two Hearts. See Strickland, 466 U.S. at 688, 692; Nupdal, 666 F.3d at 1075.

The prosecutorial misconduct component of this claim is similarly vague and conclusory. "As a general rule, '[p]rosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process.'" Louisell v. Dir. of Iowa Dep't of Corrs., 178 F.3d 1019, 1023 (8th Cir. 1999) (alteration in original) (quoting Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998)). To violate due process, a prosecutor's conduct must be so egregious as to render a defendant's trial fundamentally unfair. Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002). This standard

---

[4] T.K. disclosed that Two Hearts had sexually assaulted him separately to his mother, counselor Hawkins, and law enforcement officers. T.K. never retracted any disclosure and was credible and largely consistent in what he said.

requires that a habeas "petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)). Two Hearts has presented no information on what testimony of T.K. allegedly was false, how that was known to the prosecutor, or what the prosecutor did, as Two Hearts alleged, to "deliberately and maliciously mislead" the Grand Jury that indicted the case and the jury that, on ample evidence, convicted Two Hearts of Aggravated Sexual Abuse. See CIV Doc. 1 at 5. Thus, Two Hearts has no viable claim of prosecutorial misconduct.

### 3. Suppression of Statements Issue

Two Hearts' third ground alleging ineffective assistance of counsel avers:

Counsel argued admissibility of statements or confessions and objected to the Court's decision to admit them at pre-trial, however, counsel failed to raise this preserved issue on Direct Appeal knowing, or reasonably should have known, that this was a substantial and non-frivolous issue which was ripe to bring on Direct Appeal.

CIV Doc. 1 at 6.

Miner filed a motion to suppress statements that Two Hearts had made to law enforcement officers on June 20, 2006; March 1, 2012; and June 7, 2012. CR Docs. 31, 32. Two Hearts had very scarce grounds to argue about the voluntariness of the first two interviews. The interview on June 7, 2012 was described at trial and in Two Hearts' memorandum in support of the motion to suppress. In short, Two Hearts agreed to do a polygraph examination when he met with law enforcement on June 5, 2012. He was to get a ride to the law enforcement center in Eagle Butte for a polygraph examination on June 6. CR Doc. 31 at 2. Two Hearts did not arrive as scheduled to the law enforcement center, so tribal police sought out Two Hearts and brought him to the law enforcement center in Eagle Butte on June 6. Law enforcement officers believed

13

Two Hearts to be under the influence of alcohol, so they did not conduct the interview until the next day, June 7, 2012, after he had sobered up overnight. Two Hearts was advised of his <u>Miranda</u> rights and said that he understood the rights. He signed the advice of rights form. Two Hearts then said "I think I should talk to an attorney," to which an FBI agent responded that Two Hearts in fact had a right to talk to an attorney. Two Hearts then said "why now? I have all this equipment here." Two Hearts then voluntarily participated in the interview involving the polygraph. CR Doc. 32 at 3.

Magistrate Judge Mark A. Moreno issued a Report and Recommendation recommending denial of the motion to suppress. CR Doc. 77. Miner chose not to object to the Report and Recommendation, and this Court adopted the Report and Recommendation. CR Doc. 84. Miner explained in her affidavit that her decision was one of strategy and that the suppression issue was "fighting a losing battle." CR Doc. 16 at 5–6.

"'The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal.'" <u>Walker v. United States</u>, 810 F.3d 568, 579 (8th Cir. 2016) (quoting <u>New v. United States</u>, 652 F.3d 949, 953 (8th Cir. 2011)). Strategic decisions made by counsel are generally "virtually unchallengeable unless they are based on deficient investigation." <u>Link</u>, 469 F.3d at 1204. Miner's decision not to appeal the denial of the suppression motion did not stem from a deficient investigation and was a strategic decision. Her decision neither constitutes ineffective assistance of counsel, nor has Two Hearts shown prejudice, as a different decision from this Court or the Eighth Circuit on the suppression issue would have been highly unlikely.

### 4. Failure to Investigate Claim

Two Hearts' fourth and final claim of ineffective assistance of counsel contends that Miner failed to investigate the case independently. CIV Doc. 1 at 8. Two Hearts contends that

14

the alleged failure by counsel to investigate impaired the ability to negotiate a reasonable plea agreement. CIV Doc. 1 at 8. Miner's affidavit addressed this fourth ground by providing the following information:

> The case was investigated by Robert Overturf, an investigator with the Federal Public Defender office. The investigation produced the witnesses called by the defense at trial. It was an investigation independent of the government's discovery and evidence. Two Hearts does not list any specific investigation that was not performed by Overturf or the Federal Public Defender office so I cannot answer what more could have been done.
>
> There were several plea discussions between the prosecutor and myself. The final agreement would have recommended a 20 year sentence (10 years, doubled by the prior rape conviction) for sexual contact with a child). The other charges severed from the indictment would have been dismissed. That was a very reasonable proposal, given the possibility of a sentencing range of 30 years to life. At the time, Two Heart[s] also faced the potential of a consecutive sentence for the Failure to Register as a Sex Offender because the sexual abuse of his son happened during a period of non-registration. It was also likely that any sentence from Counts Three and Four of the indictment would have been consecutive because it was an entirely different case from Counts One and Two. Two Heart[s] rejected the agreement after numerous discussions. At the time, Two Hearts did not state that his decision to reject the plea agreement was because of alleged failure to investigate the case. At different points in my representation, Two Hearts asked me to negotiate a plea agreement. That is what prompted the initial discussion with the prosecutor and subsequent efforts to resolve the case short of trial.

CIV Doc. 16 at 6–7 (bracketed letters added). Two Hearts has not contested the information contained in Miner's affidavit or provided any additional information supporting ground four.

Miner's work at trial demonstrated that she had a good understanding of the evidence and had investigated the case. Miner's cross-examination of the prosecution witnesses revealed a well-prepared approach and appropriate efforts to question the reliability of T.K. and his memory of sexual abuse instances, particularly with regard to anything that occurred on the Cheyenne River Indian Reservation. Miner called five separate witnesses in Two Hearts' case in chief to suggest that T.K. and Two Hearts had a normal father-son relationship, from their observations, while in Eagle Butte. A number of these witnesses lived at times in the Verna Meter home. Two

15

Hearts' allegations in ground four fall short of establishing constitutionally deficient performance of counsel or prejudice therefrom under the Strickland standard.

## III.    Conclusion and Order

The motion, files, and records of this case conclusively show that Two Hearts is not entitled to relief under 28 U.S.C. § 2255. Therefore, it is hereby

ORDERED that Two Hearts' Motion to Vacate, Set Aside, or Correct Sentence, CIV Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss Petitioner's Motion, CIV Doc. 20, is granted. It is further

ORDERED that Judgment of Dismissal hereby enters, without any issuance of a certificate of appealability.


DATED this  22nd  day of February, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

16